UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

RANDALL GRANT LEICH, a/k/a
RANDY LEICH and SUZANNE CECILIA
LEICH, a/k/a SUE LEICH, a/k/a SUSAN LEICH,

Chapter 7
Case No. 11-58864-WSD
Honorable Walter Shapero

       Debtors.

_____/

## MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF LIENS, PAYMENT OF REAL PROPERTY TAXES, COMMISSIONS AND CLOSING COSTS AT CLOSING AND FOR OTHER RELIEF

Stuart A. Gold, the Chapter 7 Trustee of Randall and Suzanne Leich, by his attorneys Gold, Lange & Majoros, P.C., requests that this Court enter an order pursuant to Fed. R. Bankr. P. 6004(c) & 9014 and 11 U.S.C. §§ 363(b) & 363(c) authorizing the Trustee to sell real property located at 2401 Chicago Road, Warren, MI 48092-1054 free and clear of liens, transfer of liens to proceeds, and to pay real property taxes, commissions, and closing costs at closing and for other relief. (See Exhibit 1).

IN SUPPORT of this motion, the Trustee states:

### Jurisdiction

1.     The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) & 1334.

2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).

### Facts

3.     On July 11, 2011, Randall and Suzanne Leich (the "Debtors") filed a voluntary joint petition under Chapter 7 of Title 11 of the United States Code. Stuart A. Gold is the Chapter 7 Trustee in this case.

4.    The assets of this bankruptcy estate include the bankruptcy estate's interest in residential property commonly known as 2401 Chicago Road, Warren, Michigan 48092-1054 (the "Property").

5.    The Property is subject to liens, claims, and encumbrances as follows:

a.    A first mortgage held by Bank of America with an approximate outstanding balance of $162,322.26 (the "First Mortgage");

b.    A second mortgage held by Bank of America with an approximate outstanding balance of $24,026.33;

c.    Current property taxes owed to the City of Warren Treasurer in the approximate amount of $1,490.02.

6.    On October 15, 2013 this Court entered an Order authorizing the Trustee to employ Ralph Roberts Realty (the "Broker") as real estate broker. The Property was subsequently listed and marketed for sale. The Broker showed the Property to a number of prospective purchasers.

7.    The Trustee has entered into a purchase agreement with Tom and Karin Jaberoo as buyers providing for the sale of the Property for $123,000.00. A copy of the Purchase Agreement is attached as Exhibit 6 and its terms are incorporated herein. Mr. and Mrs. Jaberoo are not insiders and have no known connections with any party in interest in this case.

8.    The sales proceeds are not sufficient to pay all encumbrances and costs of sale in full. However, the Trustee believes that a justification exists to consummate the proposed sale because the parties have agreed to make a $10,000.00 carve-out payment to the Trustee for the benefit of creditors upon approval of mortgagee Bank of America.

- 2 -

10. The Broker is currently coordinating with Bank of America to obtain consent to the proposed short sale arrangement. However, the Trustee believes it is prudent to request immediate authority to sell the Property.

11. In accordance with Sections 363(b)(1) and (f) of the Bankruptcy Code, the Trustee seeks to sell the Property free and clear of all claims, liens, interests, and encumbrances and transfer any claims, liens, interests or encumbrances to the proceeds of the sale.

12. The Property will be sold pursuant to a Trustee's deed, as is, without any representations or warranties, whether express or implied, including but not limited to, any warranty of habitability.

13. The Trustee will deliver possession of the Property to the Seller immediately after closing. Therefore, the Debtors must vacate the property at least 48 hours prior to closing. If the Debtors fail to timely vacate the Property then the Trustee will have the appropriate law enforcement agency evict the Debtors.

14. The Debtors must leave the Property in broom-clean condition with all fixtures and landscaping left intact.

15. The Trustee believes that the proposed sale of the Property is in the best interest of the bankruptcy estate and its creditors.

**Request for Authority to Sell Property**

16. Section 363(b) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In general, a trustee may sell property of the estate outside of the ordinary course of business where the sale represents an exercise of the trustee's sound business judgment. See e.g., Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); Committee of Equity Sec.

- 3 -

Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983). Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether accurate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property and (d) whether the parties have acted in good faith. See, e.g., In Re Titusville County Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991). Here, each of these four factors is met. Accordingly, the proposed sale of the Property should be approved.

17.     First, the Trustee believes a sound business justification exists for the sale. The Property is not necessary for any reorganization effort. The Trustee is unable to provide security for the Property and the Property has been marketed to the public via an experienced broker. The proposed sale is an arm's length transaction.

18.     Second, concurrent with the filing of this Motion, the Trustee has served notice of the Motion on (a) the United States Trustee, (b) all potential lien holders, (c) taxing authorities, (d) the Debtors, (e) and the other parties on the matrix in this case.

19.     Third, the Trustee believes the sale price is fair and reasonable based upon the condition of the Property, market conditions, the location of the Property and comparable property values in the area.

20.     Finally, courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are fully disclosed. For the reasons set forth above, all of these requirements are met here. The Trustee, in exercise of his business judgment, believes that the proposed sale of the Property to the purchaser on the terms set forth in the sales contract is in the best interests of the estate and its creditors.

- 4 -

21. For all the reasons set forth above, the sale of the Property should be approved pursuant to Section 363(b) of the Bankruptcy Code.

**Request for Authority to Sell Property Free**
**and Clear of all Liens, Claims, and Encumbrances**

22. Under Section 363(f) of the Bankruptcy Code, a trustee may sell property of the estate free and clear of all liens, claims, encumbrances, redemption rights, and other interests (collectively, the "Property Interests") asserted in or against the property being sold if: (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting the Property Interest consents to the sale; (c) the sale price exceeds the aggregate value of all such liens on the property; (d) the Property Interest is subject to a bona fide dispute; or (e) the party asserting the Property Interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. The Court may approve a sale free and clear of all Property Interests so long as one of the requirements of section 363(f) is satisfied. See e.g., In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988).

23. In this case, the Trustee intends to pay all property taxes, the mortgage in a consensually reduced amount, and other encumbrances in full at closing.

24. Accordingly, the Trustee seeks authority to sell the bankruptcy estate's interest in the Property pursuant to the purchase agreement free and clear of any Property Interests, with any Property Interests transferred to the proceeds of sale.

**Treatment of Carve-out as Non-exempt and Non-exemptable Property of the Estate**

25. The Debtors Randall Leich and Suzanne Leich claim exemptions in the Property in the amounts of $19,727.24 and $16,320.00, respectively, under 11 U.S.C. § 522(d)(1).

26. That exemptions, however, will not be paid from the sales proceeds of the Property.

27.     As recently explained by Judge Cleland, exempt property is not protected against secured debts, and exemptions are subordinate to a secured creditor's lien on real property. <u>See</u>, <u>In re Baldridge</u>, case no. 12-14612, 2013 U.S. Dist. LEXIS 58512, *3–4 (E.D. Mich. Apr. 24, 2013).

28.     Thus, if the amount of the secured debt exceeds the fair market value of the property such that there is no equity, then the exemption is lost. <u>See</u>, <u>Id.</u> at *4.

29.     As the Debtors concede on their Schedule A, there is no equity in the Property.

30.     Therefore, the sales proceeds, including the carve-out, will represent non-exempt and non-exemptable property of the bankruptcy estate.

### <u>Authority to Pay Closing Costs, Mortgages, Commissions, and Taxes at Closing</u>

31.     Consistent with the application to employ Ralph Roberts Realty, the proposed order provides for payment of a real estate commission not to exceed 7% of the gross sale price.

32.     Moreover, the Trustee asks permission to pay the reasonable, usual, and standard closing costs associated with the sale of the Property.

33.     The Trustee also requests that the Court authorize him to pay for, at closing, any of the following: transfer taxes, title work, unpaid property taxes, unpaid special assessments, unpaid water bills, normal closing costs, and any costs incurred by Ralph Roberts Realty or others associated with maintaining the property, including, without limitation, lawn-cutting, property insurance, landscaping, repairs, re-keying, and clean-up.

34.     Finally, the Trustee requests that the Court grant him the authority to execute any and all documents and agreements, and to do anything necessary or appropriate to implement and effectuate the sale.

34.     Finally, the Trustee requests that the Court grant him the authority to execute any and all documents and agreements, and to do anything necessary or appropriate to implement and effectuate the sale.

## Eviction and Condition of Property on Vacancy

35.     The Trustee believes that the Debtors will cooperate in vacating the property, leaving it in broom-clean condition, and leaving intact all fixtures and landscaping.

36.     Nevertheless, in an abundance of caution, the sale order provides that the Debtors must vacate the Property at least 48 hours before closing.

37.     If the Debtors fail to vacate the Property, then the Trustee may have an appropriate law enforcement agency evict the Debtors.

38.     Further, the Debtors must leave the Property in broom-clean condition with all fixtures and landscaping left intact.

39P.     Under Bankruptcy Code §§ 105 and 542, the Court may grant the requested relief.

WHEREFORE, the Trustee requests that this court grant it authority to consummate the purchase agreement, to sell the real property free and clear of all encumbrances, and to pay the real property taxes, commission, and closing costs at closing.

Respectfully submitted,

GOLD, LANGE & MAJOROS, P.C.

Dated: January 9, 2014     /s/ John W. Nemecek
JOHN W. NEMECEK (P71371)
Attorneys for Trustee
24901 Northwestern Highway, Suite 444
Southfield, MI 48075
(248) 350-8220
jnemecek@glmpc.com

H:\SAG TRUSTEE CASES\Leich, Randall & Suzanne\Sale Motion\Motion to Sell Real Property.dal.doc

- 7 -

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

RANDALL GRANT LEICH, a/k/a                    Chapter 7
RANDY LEICH and SUZANNE CECILIA               Case No. 11-58864-WSD
LEICH, a/k/a SUE LEICH, a/k/a SUSAN LEICH,    Honorable Walter Shapero

     Debtors.

_____/

## ORDER AUTHORIZING SALE OF PROPERTY
## FREE AND CLEAR OF LIENS, PAYMENT OF REAL PROPERTY TAXES,
## COMMISSIONS, AND CLOSING COSTS AT CLOSING AND FOR OTHER RELIEF

     Stuart A. Gold, the Chapter 7 Trustee of the bankruptcy estate of Randall and Suzanne

Leich (the "Trustee") filed a Motion for Order Authorizing Sale of Property Free and Clear of

Liens, Payment Real Property Taxes, Commissions, and Closing Costs at Closing and for Other

Relief (the "Motion"); Notice of the Motion having been served on all interested parties and the

matrix of creditors; no objections having been timely filed or served; and the Court being duly

advised in the premises:

     IT IS HEREBY ORDERED as follows:

(1)    The Trustee's Motion is granted.

(2)    The Trustee is authorized to sell the bankruptcy estate's real property commonly

known as 2401 Chicago Road, Warren, Michigan 48092-1054, legally described as follows:

    SEC 6 COM AT S 1/4 POST SEC 6;TH N02*07'40"E 2196.44 FT
    ALG N-S 1/4 LINE; TH S64*50'40"W 1262.20 FT ALG C/L
    CHICAGO RD TO POB; TH S64*50'40"W 103.75 FT ALG SD
    C/L; TH N18*51'W 428.27 FT; TH N86*13'40"E 60.91 FT; TH
    S25*09'20"E 403.47 FT TO POB. 0.769 A

    Parcel No. 13-06-326-007

## EXHIBIT 1

("Property") to Tom and Karin Jaberoo, and/or their assignees free and clear of any and all mortgages, water and sewer bills, utility bills, judgment liens, tax liens, lis pendens, and other claims and encumbrances pursuant to 11 U.S.C. § 363(b) & 363(f) according to the terms and conditions set forth in the Trustee's Motion.

      (3)    All liens, claims, and encumbrances against the Property, whether consensual or statutory, are extinguished with respect to the Property, including:

    a.    A first mortgage held by Bank of America with an approximate outstanding balance of $162,322.26;

    b.    A second mortgage held by Bank of America with an approximate outstanding balance of $24,026.33;

    c.    Property taxes owed to the City of Warren Treasurer in the approximate amount of $1,490.02.

The Trustee shall pay the Mortgage in a mutually agreed short sale amount, along with all property taxes, transfer taxes, closing costs, broker commission not to exceed 7% and broker expenses associated with maintaining the property, property insurance, payment for transfer taxes, title work, unpaid property taxes, unpaid special assessments, unpaid water bills, and normal closing costs from the gross proceeds of sale of the Property at closing. All other liens, claims, interests and encumbrances against the Property will attach to the net sale proceeds of sale of the Property with the same priority, validity and enforceability that any such liens, claims and encumbrances may have had against the Property prior to the sale. The net sale proceeds will be held by the Trustee and not disbursed until further order of the court.

      (4)    This order may be recorded or filed with the Macomb County Register of Deeds to evidence the fact that the Property was owned by the bankruptcy estate, sold to Tom and Karin

Jaberoo, and that all prior mortgages, liens, claims, interests, and encumbrances with respect to the Property have been discharged and released.

(5)     The Trustee may execute such documents, instruments, and agreements and perform such acts as may be necessary and appropriate to implement, effectuate, and consummate the sale of the Property.

(6)     All federal, state, county and local governmental agencies or departments are ordered and directed to accept all filings, deeds and instruments necessary and appropriate to consummate the sale transaction contemplated by this order including, without limitation, filings in the recording offices in Macomb County, Michigan and state governmental agencies or departments.

(7)     Notwithstanding any exemption already claimed or claimed later by the Debtors, any sales proceeds received by the bankruptcy estate in relation to the sale represents non-exempt and non-exemptable property of the bankruptcy estate which will be used to pay creditors, including administrative claims.

(8)     The Debtors must vacate the Property at least 48 hours prior to closing. If the Debtors fail to timely vacate the Property, the Trustee is authorized to have an appropriate law enforcement agency evict them. The Debtors shall leave the Property in broom clean condition with all fixtures and landscaping intact.

(9)     Pursuant to Fed. R. Bankr. P. 6004(h), the Trustee may consummate the sale authorized by this order prior to the expiration of 14 days after entry of this Order.

Form B20A(Official Form 20A)
Revised 12/1/10

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

| | |
|---|---|
| RANDALL GRANT LEICH, a/k/a | Chapter 7 |
| RANDY LEICH (xxx-xx-1682) and | Case No. 11-58864-WSD |
| SUZANNE CECILIA LEICH, a/k/a | Honorable Walter Shapero |
| SUE LEICH, a/k/a SUSAN LEICH (xxx-xx-8597), | |

      Debtors.

_____/

2401 Chicago
Warren, MI 48092

## NOTICE OF MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF LIENS, PAYMENT OF REAL PROPERTY TAXES, COMMISSIONS AND CLOSING COSTS AT CLOSING AND FOR OTHER RELIEF

      Stuart A. Gold, the Chapter 7 Trustee, has filed a Motion for Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Commissions, and Closing Costs at Closing and for Other Relief (the "Motion"). A complete copy of the Motion and Purchase Agreement are on file with the Bankruptcy Court.

      The Trustee has accepted an offer submitted by Tom and Karin Jaberoo to purchase the bankruptcy estate's interest in property located at 2401 Chicago Road, Warren, Michigan 48092-1054 (the "Property") for $123,000.00 subject to Bankruptcy Court approval. The sale is subject to the Trustee, purchaser and mortgagee Bank of America agreeing to a "short sale carve-out" arrangement providing for a carve-out fee of $10,000.00 to the estate which will fund a distribution to creditors. No exemption will be paid to the Debtors due to lack of equity in the property.

      The sale of the property will be made free and clear of all mortgages, liens, claims, or interests with all liens, claims, or interests transferred to the net proceeds of the sale. However, the Trustee intends to pay off the valid mortgage of Bank of America in a reduced amount, closing costs, broker commission and expenses, and transfer taxes at closing. The sale of the property will not close until the Bankruptcy Court approves the sale. The property will be sold "as is", "where is", without any representations or warranties of any kind or nature.

      The Debtors will be required to vacate the Property no later than 48 hours prior to closing or being evicted by law enforcement agencies. The Debtors will leave the property in broom-clean condition with all fixtures and landscaping intact.

## EXHIBIT 2

**Your rights may be affected**. **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant the motion, or if you want the Court to consider your views on the motion, within fourteen (14) days from the date of service of the motion, you or your attorney must:

1.      File with the Court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 West Fort Street, Suite 2100
Detroit, Michigan 48226

If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it within the above-referenced fourteen (14) day time period. All attorneys are required to file pleadings electronically.

Mail a copy to:

John W. Nemecek, Esq.
Gold, Lange & Majoros, P.C.
24901 Northwestern Highway, Ste. 444
Southfield, MI 48075

2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Respectfully submitted,

GOLD, LANGE & MAJOROS, P.C.

Dated: January 9, 2014          /s/ *John W. Nemecek*
JOHN W. NEMECEK (P71371)
Attorneys for Trustee
24901 Northwestern Highway, Suite 444
Southfield, MI 48075
(248) 350-8220
jnemecek@glmpc.com

---

[1] Response or answer must comply with F.R.Civ.P.8(b)(c) and (e)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

RANDALL GRANT LEICH, a/k/a
RANDY LEICH and SUZANNE CECILIA
LEICH, a/k/a SUE LEICH, a/k/a SUSAN LEICH,

       Debtors.

_____/

Chapter 7
Case No. 11-58864-WSD
Honorable Walter Shapero

### CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2014, I electronically filed *1) Motion for Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Commissions and Closing Costs at Closing and for Other Relief; 2) Proposed Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Commissions and Closing Costs at Closing and for Other Relief; 3) Notice of Motion for Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Commissions and Closing Costs at Closing and for Other Relief; 4) Certificate of Service, and 5) Exhibit Purchase Agreement* with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Office of the U.S. Trustee
211 W. Fort Street, Suite 700
Detroit, MI 48226

Trott & Trott, PC
31440 Northwestern Highway, # 200
Farmington Hills, MI 48334

William R. Orlow, Esq.
BOC Law Group, P.C.
24100 Woodward Avenue
Pleasant Ridge, MI 48069

I also hereby certify that on January 9, 2014, I have mailed by First Class Mail with the United States Postal Service *1) Motion for Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Commissions and Closing Costs at Closing and for Other Relief; 2) Proposed Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Commissions and Closing Costs at Closing and for Other Relief; 3) Notice of Motion for Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Commissions and Closing Costs at Closing and for Other Relief; 4) Certificate of Service, and 5) Exhibit Purchase Agreement* to the following non-ECF participants:

Tom and Karin Jaberoo
28222 Wexford Drive
Warren, MI 48092

Michigan Department of Treasury
Collection/Bankruptcy Unit
P.O. Box 30168
Lansing, MI 48909-0000

### EXHIBIT 4

Sandra Braun
Michigan Department of Treasury
Collection Division - Bankruptcy Unit
P.O. Box 30199
Lansing, MI 48909

Carolyn Kurkowski Moceri
Warren City Treasurer
One City Square, Suite 200
Warren, MI 48093-2395

Ted Wahby
Macomb County Treasurer
1 South Main Street, Second Floor
Mount Clemens, MI 48043

Ralph Roberts Realty
7659 Auburn Road
Utica, MI 48317

Central Land Agency
8300 Hall Road, Suite 120
Utica, MI 48317

I also hereby certify that on January 9, 2014, I have mailed *Notice of Motion for Order Authorizing Sale of Property Free and Clear of Liens, Payment of Real Property Taxes, Commissions, and Closing Costs at Closing and for Other Relief* by First Class Mail with the United States Postal Service to the following non-ECF participants:

All parties listed on the court's matrix of creditors.

GOLD, LANGE & MAJOROS, P.C.

*/s/ John W. Nemecek*
JOHN W. NEMECEK (P71371)
Attorneys for Trustee
24901 Northwestern Highway, Suite 444
Southfield, MI 48075
Phone: (248) 350-8220
Fax:     (248) 350-0519
Email: jnemecek@glmpc.com

- 2 -

**MLS#** 213203556

| | |
|---|---|
| **LISTING BROKER** Ralph Roberts Realty, LLC | **SELLING BROKER** Keller Williams Macomb / St. Clair |
| **LISTING AGENT** | **SELLING AGENT** Tom Jaberoo |
| **AGENT ID #**      **OFFICE ID** 336321 | **AGENT ID #** 371418    **OFFICE ID** 711 |
| **PHONE** | **PHONE** 586-949-0200 |

1. **PROPERTY DESCRIPTION:** The undersigned Buyer hereby offers and agrees to purchase property located in Michigan, City/Township/Village of     Warren     County of   Macomb    Tax ID#

   Legal description SEC 6 COM AT S 1/4 POST SEC 6;TH N02°07'40"E 2196.44 FT ALG N-S 1/4 LINE; TH S
   Also commonly known as                 2401 Chicago Road, Warren, MI        Zip   48092-1054
                                      Street Address

   Property described above shall include all available sub surface and mineral rights, all fixtures, improvements and appurtenances now in or on property, including all built-in appliances/equipment, shelving, cabinets, all lighting fixtures, ceiling fans, attached carpeting, all window treatments and hardware, attached mirrors, telephone system and instruments designed for system, television antennae, satellite dishes (if owned) and complete rotor equipment, storm doors, storm windows, screens, awnings, garage door openers and transmitters, water softeners and security systems (if owned), mailboxes, fences, fireplace inserts, doors, screens, gas logs, grates, gas attachments and equipment, attached humidifiers, all landscaping, fuel in tanks, central vacuum and attachments, and   SEE ADDENDUM

   Seller shall provide a bill of sale for all including personal property at closing. Exclusions specified in listing contract that are **NOT** specifically excluded herein shall be included in this sale. _____

2. **PRICE:** Buyer agrees to pay the sum of            One hundred twenty-three thousand          Dollars
   ($    123,000    ) in consideration for which Seller will provide a ~~warranty~~ deed subject to existing building and use restrictions and easements and rights of way of record.     *Trustee's* ~~Sale~~

3. **METHOD OF PAYMENT:** All money must be paid in U.S. funds by certified, cashiers or a licensed title company check acceptable to closing agent. Sale shall be completed by the following method: (Mark only the box that applies.)

   ☐ **A. CASH SALE.**

   ☑ **B. CASH SALE WITH NEW MORTGAGE.** Agreement contingent upon Buyer securing a      FHA      mortgage, not contingent upon sale or closing of other assets, in the amount of $   118,500   and paying $   4,500   down plus mortgage costs, prepaid items, adjustments and flood insurance (if required) by lender. Buyer agrees to apply for such mortgage within   5   calendar days from final acceptance of this Agreement at Buyer's own expense. If a mortgage commitment conditioned only upon marketable title and satisfactory survey (if required) is not delivered to Listing Broker within   30   calendar days from date of Agreement, Listing Broker shall be notified immediately and Seller may declare Agreement void. Buyer further agrees that in connection with said application to lender, Buyer will promptly comply with lender's request for true and accurate information required to process loan application.

   ☐ **C. SALE TO EXISTING FINANCING, LAND CONTRACT OR PURCHASE MONEY MORTGAGE.** (See appropriate finance addendum attached and made a part hereof.)

4. **EARNEST MONEY:** Buyer is tendering with offer $      1,000      in the form of a check. An additional $   3,500   shall be deposited within   2   calendar days of final acceptance making total earnest monies on deposit $   4,500   . All monies shall be deposited by Broker/escrow agent in accordance with rules and regulations of the State of Michigan and applied to purchase price at closing. Earnest monies shall be disbursed ONLY in accordance with either: (a.) the terms hereof; (b.) a fully executed mutual release; or (c.) upon order of appropriate authority. If offer made is not accepted by Seller, earnest monies shall be returned to Buyer.

5. **ACKNOWLEDGMENT OF EARNEST MONEY DEPOSIT:** Received by:      Ralph Roberts Realty, LLC
                                                       Company Name

   _____          _____
            Agent                                  Signature

6. **CLOSING:** Subject to all conditions herein, closing shall take place on   SUBJECT TO BANKRUPTCY COURT APPROVAL   at Listing Office or otherwise mutually agreed location.                           Date

7. **POSSESSION:** Seller shall deliver possession to Buyer ☐ at closing or ☐ within _____ days **after closing** (closing to apply if no choice is made.) If possession is not delivered at closing, from and including day of closing, through date of vacating property, SELLER SHALL PAY the sum of $ _____ per day. **Designated escrow agent shall retain from amount due Seller the sum of 1¼ times daily fee, times total days for said occupancy.** Designated escrow agent shall disburse occupancy fee due Buyer every 30 days, upon written request from Buyer. Seller shall be entitled to any unused portion of occupancy fee as determined by date property is vacated and keys surrendered to ☐ **Buyer** ☐ **Listing Broker** ☐ **Selling Broker.**

_____
Buyer(s) Initials                             Page 1 of 4                              Seller(s) Initials

**EXHIBIT 6**

8. **AVAILABILITY OF HOME PROTECTION PLANS:** Buyer and Seller acknowledge having been advised of availability of home protection plans.

9. **SEWER AND WATER CHARGES:** Seller agrees to pay for all sewer and water charges to date of ☒ CLOSING ☐ POSSESSION (possession will apply if no choice has been made.) Designated escrow agent shall retain from amount due Seller at closing $300.00, or more if needed for final water and sewer charges. After water and sewer bills are verified paid, any unused portion shall be returned to Seller.

10. **TITLE EVIDENCE AND SURVEY:** Seller agrees to order title insurance within fourteen (14) calendar days of acceptance of offer and to furnish Buyer a Commitment of Title Insurance to be issued without standard exceptions. **Buyer to secure and pay for a survey, if required.** After closing, a Policy of Title Insurance without standard exceptions will be issued in the amount of purchase price, bearing date of closing or later guaranteeing title in condition required for performance of Agreement. Title Commitment shall be "marked up" at closing insuring through date of recording.

11. **TITLE OBJECTIONS:** If objection to title is made, based upon written notice that title is not in marketable condition required for performance hereunder, Seller shall have 30 calendar days from date notified in writing of particular defects claimed, to either: (a.) remedy title; or (b.) obtain title insurance satisfactory to Buyer. Buyer agrees to complete sale within 10 calendar days of written notification or by date specified if later. If Seller is unable or unwilling to remedy title within time specified, Buyer will waive requirement in writing within 10 calendar days of written notification thereof, or Agreement may become null and void at Buyer's option.

12. **PROPERTY TAXES:** All property taxes due and payable on or before date of closing shall be paid by Seller. Current taxes shall be prorated and adjusted as of date of closing in accordance with due date of municipality or taxing unit(s) in which property is located. Buyer acknowledges that property taxes are subject to change. If taxes are not paid in advance, see addendum made a part hereof.

13. **ASSESSMENTS:** Seller shall discharge in full all public authority charges confirmed by said municipality or taxing unit(s) (special assessments, water, sewer, paving charges, etc.) which are currently due and payable. Buyer is responsible for other assessments including, but not limited to, capital and lateral charges (assessed, but value not yet determined) which are confirmed and become due and payable after closing.

14. **CONDOMINIUM/HOMEOWNERS ASSOCIATION ASSESSMENTS:** Current dues shall be prorated to date of closing. Any delinquent condominium/homeowner association dues/assessments/liens shall be paid by Seller at closing. Any and all dues/ assessments/liens confirmed and becoming due and payable after closing will be paid by Buyer. (See Condominium Addendum made a part hereof if applicable)

15. **MAINTENANCE OF PROPERTY:** Seller is responsible to keep property in substantially the same condition as of date of Agreement. Seller is responsible to maintain grounds and keys are surrendered by Seller except for conditions disclosed in Seller's Disclosure Statement or conditions discovered by Buyer as part of inspections.

16. **RISK OF LOSS:** If loss or damage to property occurs before closing for any reason (including, but not limited to, fire, vandalism or acts of God) risk of loss shall be on Seller. If property is destroyed or substantially damaged before closing, at Buyer's option, this Agreement may become null and void, or Buyer may accept property and take assignment of insurance proceeds as available.

17. **DISCLAIMER OF BROKER(S):** Broker(s) and Salesperson(s) specifically disclaim responsibility for condition of property and/or for performance of Agreement by the parties. Parties acknowledge that they are not relying on any representation or warranties that may have been made other than those in writing.

18. **FINAL WALK-THROUGH PRIOR TO CLOSING:** Buyer reserves right to walk through property within 48 hours prior to closing to determine whether terms of Agreement have been met.

19. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between Buyer and Seller. No agreement shall be binding except those in writing and signed by all parties involved. Prior negotiations and verbal agreements will not be binding.

20. **SUCCESSORS AND ASSIGNS:** This Agreement shall bind executors, administrators, successors and assigns of the parties.

21. **FACSIMILE/ELECTRONIC AUTHORITY:** Parties agree that this offer, any counteroffer or acceptance, may be delivered by use of facsimile/electronic authority with signatures, and that initials and modifications shall be deemed valid and binding upon the parties as if original signatures.

22. **TIME IS OF THE ESSENCE:** Buyer and Seller understand that no extensions of time limits contained herein are expected or agreed to unless specified in writing and signed by both Buyer and Seller. Time is of the essence.

Buyer(s) Initials                    Page 2 of 4                    Seller(s) Initials

23. **SELLER'S DISCLOSURE STATEMENT:** (Initial only one.)

Buyer(s) Initials

**A. With Disclosure:** Buyer has, prior to writing this offer, received Seller's Disclosure Statement.

**B. Without Disclosure:** All Parties understand that Seller's Disclosure Statement was not available at time this offer was written. Seller shall provide Buyer with a Seller's Disclosure Statement with Seller's acceptance of this offer pursuant to Public Act 92 of 1993.

24. **DEFAULT:**

**A. BUYER:** In the event Buyer fails to fulfill obligations set forth herein or fails to close this transaction by time and manner provided, Seller may elect to enforce terms herein, declare sale void, retain deposit (per Paragraph 4), and/or seek available legal or equitable remedies.

**B. SELLER:** In the event Seller fails to fulfill obligations set forth herein or fails to close this transaction by time and manner provided, Buyer may elect to enforce terms herein, declare sale void, be entitled to refund of deposit (per Paragraph 4), and/or seek available legal or equitable remedies.

25. **FEES:** Buyer agrees to pay closing fees charged by lender and/or title company and a compliance/transaction fee of $ _____195.00_____ payable to Selling Broker at closing. Seller shall pay transfer fees and other costs required to convey title.

26. **TIME LIMIT:** Buyer is making this offer valid until _____ ☐AM ☐PM on _____ or until withdrawn in writing.

27. **COUNTEROFFER:** In the event Seller makes any written changes to terms and conditions herein, such changes, if initialed and Seller Acceptance executed, shall constitute a counteroffer by Seller to Buyer, which shall remain valid until _____ ☐AM ☐PM on _____ . Acceptance of counteroffer by Buyer occurs when Buyer initials each change, signs Buyer Acknowledgement of Acceptance (bottom line), and delivers notice to Seller by time stipulated above.

28. **ADDITIONAL DOCUMENTS ATTACHED:** The Seller's Disclosure Statement, Lead Based Paint Disclosure, Agency Relationship Disclosure, plus the following checked items are also attached hereto and made a part hereof.

☐ FHA/VA Addendum ☐ Unplatted Land Addendum ☐ Contingency Sales Agreement ☐ Swimming Pool Addendum
☐ For Your Protection Get An Inspection ☐ Private Road Addendum ☐ Condominium Addendum ☐ Additional (General) Conditions
☐ Well & Septic Addendum ☐ Financing Addendum ☐ Vacant Land Addendum ☐ _____

29. **WELL AND SEPTIC SYSTEM INSPECTION: See attached addendum made a part hereof, if applicable.**

30. **INSPECTION CONTINGENCY: Broker(s) recommend that Buyer conduct independent private inspection(s) of property at Buyer's expense.** Due diligence may include, but is not limited to, any inspection(s) or research deemed necessary by Buyer, including; structural integrity, condition of mechanical systems, environmental status, health or safety conditions, surveys or infestation. **To ensure intended use of premises it is recommended that Buyer research:** square footage; building and use restrictions; easements; ordinances; regulations; school district; and/or property tax status. If Buyer **DOES NOT** notify Seller, in writing, within _____5_____ calendar days from date of final acceptance of Agreement that Buyer is dissatisfied with results of due diligence, Agreement shall be binding without regard to said inspection(s). If Buyer notifies Seller, in writing and within specified time, that, in Buyer's sole judgment, Buyer is dissatisfied with results of due diligence, Buyer shall do one, or a combination, of the following within the contingency period stated above.

**A.** Present to Seller an amendment for mutual agreement that cites a list of repairs and/or conditions to be remedied. Present to
**B.** Seller an amendment for mutual agreement with a credit to be applied against the purchase price, and/or a price reduction, in full satisfaction of inspection contingency.
**C.** Present to Seller a Notice of Dissatisfaction with due diligence which shall render Agreement null and void, in which case Seller agrees to authorize Broker to return all earnest monies to Buyer.
**D.** In the event Seller and Buyer are unable to reach an Agreement to Buyer's proposals made under A or B, Buyer shall either elect to proceed with transaction by waiving this contingency in writing, or declare Agreement void by election of C within 3 calendar days of receipt of Seller's written response to A or B above.

**Buyer: Does** _____ **Does Not** _____ desire to have Property Inspection.
Buyer Initials ................................ Buyer Initials

31. **MUNICIPAL INSPECTIONS:** If a municipal inspection and/or certification of premises are required by local ordinance, State or or Federal law, or Buyer's lending institution, provided repairs not exceed $ _____ Buyer may assume additional costs or declare Agreement void.

Buyer(s) Initials

Page 3 of 4

Seller(s) Initials

32. **LEAD-BASED PAINT DISCLOSURE/INSPECTION:** (For residential housing built prior to 1978)

A. _____ Buyer acknowledges that prior to signing this Agreement, Buyer has received and reviewed a copy of the Lead-
Buyer Initials Based Paint Seller's Form completed by the Seller on _____12/26/2013_____ the terms of which are
incorporated herein by reference.

B. _____ Buyer shall have a ____5____ day opportunity after date of Agreement to conduct an inspection of property for
Buyer Initials presence of lead-based paint and/or lead-based hazards. (Federal regulations require a 10 day or other mutually
agreed upon period of time.) If Buyer is not satisfied with results of this inspection, upon notice of Buyer to Seller
within this period, Agreement shall be terminated any deposit shall be refunded to Buyer.

C. _____ Buyer hereby waives an opportunity to conduct a risk assessment or inspection for presence of lead-based paint
Buyer Initials and/or lead-based paint hazards.

33. **LIABILITY OF BUYER FOR DAMAGE:** Buyer shall be solely responsible for any and all damage to property as a result of any
and all inspection(s) of property authorized by or conducted by Buyer. Buyer shall pay for any and all necessary repairs to restore
property to its condition prior to inspection(s) or shall reimburse Seller for actual cost of such restoration.

34. **BUYER ACCEPTANCE OF CONDITION:** If Buyer elects to close regardless of conditions disclosed in due diligence period,
Buyer shall be deemed to have accepted property in its **"AS IS"** condition. Buyer hereby knowingly waives, releases and
relinquishes any and all claims or causes of action against Brokers, their officers, directors, employees and/or their agents for
condition of property.

35. **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA):** If sale price of residence exceeds $300,000.00, parties to
Agreement will be bound by FIRPTA requirements and must complete addendum for FIRPTA.

36. **LEGAL COUNSEL RECOMMENDATION:** BROKER(S) RECOMMEND(S) THAT ALL PARTIES TO THIS AGREEMENT RETAIN
AN ATTORNEY TO PROTECT THEIR INTERESTS.

37. **OTHER TERMS AND CONDITIONS:** __SEE ADDENDUM - SUBJECT TO BANKRUPTCY COURT APPROVAL.__

_____

**BUYER SIGNATURE AND ACKNOWLEDGMENT OF RECEIPT:** Buyer hereby makes this offer with terms and conditions
contained herein.

WITNESS _____     BUYER _____

DATE __12/26/2013__     BUYER _____

**SELLER SIGNATURE:** Seller hereby agrees to terms and conditions contained herein. Seller acknowledges receipt of a copy of
Agreement.

WITNESS _____     SELLER _____

DATE __1/3/14__     SELLER _____

**BUYER ACKNOWLEDGMENT OF ACCEPTANCE:** Buyer by signing below acknowledges receipt of Seller's signed acceptance
of Agreement or shall constitute a final acceptance of Seller's counteroffer.

WITNESS _____     BUYER _____

DATE _____     BUYER _____

**DISCLAIMER:** This form is provided as a service of the Metropolitan Consolidated Association of REALTORS® to its members.
Those who use this form are expected to review both form and details of this particular transaction to ensure that each action of this
form is appropriate for this transaction. The Metropolitan Consolidated Association of REALTORS® is not responsible for the use or
misuse of this form, for misrepresentation, or warranties made in connection with this form.

 

# Disclosure Regarding Real Estate
# Agency Relationships

A

Before you disclose confidential information to a real estate licensee regarding a real estate transaction, you should understand what type of agency relationship you have with that licensee.

As of Jan. 1, 1994 Michigan law requires real estate licensees who are acting as agents of sellers or buyers of real property to advise the potential sellers or buyers with whom they work of the nature of their agency relationship.

A broker or salesperson may function in any of the following capacities:
- represent the seller as an authorized seller's agent or subagent
- represent the buyer as an authorized buyer's agent or subagent
- represent both the seller and buyer as a disclosed dual agent, authorized by both the seller and buyer
- represent neither the seller or buyer as an agent, but provide services authorized by the seller or buyer to complete a transaction as a transaction coordinator.

## SELLER'S AGENTS

A seller's agent, under a listing agreement with the seller, acts solely on behalf of the seller. A seller can authorize a seller's agent to work with subagents, buyer's agents and/or transaction coordinators. A subagent of the seller is one who has agreed to work with the listing agent, and who, like the listing agent, acts solely on behalf of the seller. Seller's agents and their subagents will disclose to the seller known information about the buyer which may be used to the benefit of the seller.

The duties that a seller's agent and subagent owes to the seller include:
- promoting the best interests of the seller
- fully disclosing to the seller all facts that might affect or influence the seller's decision to accept an offer to purchase
- keeping confidential the seller's motivations for selling
- presenting all offers to the seller
- disclosing to seller all information known to the seller's agent about the identity of all buyers and the willingness of those buyers to complete the sale or to offer a higher price.

## BUYER'S AGENTS

A buyer's agent, under a buyer's agency agreement with the buyer, acts solely on behalf of the buyer. A subagent of the buyer is one who has agreed to work with the buyer's agent and who, like the buyer's agent, acts solely on behalf of the buyer. Buyer's agents and their subagents will disclose to the buyer known information about the seller which may be used to benefit the buyer.

The duties a buyer's agent and subagent owe to the buyer include:
- promoting the best interests of the buyer
- fully disclosing to the buyer all facts that might affect or influence the buyer's decision to tender an offer to purchase
- keeping confidential the buyer's motivations for buying
- presenting all offers on behalf of the buyer
- disclosing to the buyer all information known to the buyer's agent about the willingness of the seller to complete the sale or to accept a lower price.

## DUAL AGENTS

A real estate licensee can be the agent of both the seller and the buyer in a transaction, but only with the knowledge and informed consent, in writing, of both the seller and the buyer.

In such a dual agency situation, the licensee will not be able to disclose all known information to either the seller or the buyer. As a dual agent, the licensee will not be able to provide the full range of fiduciary duties to the seller or buyer.

The obligations of a dual agent are subject to any specific provisions set forth in any agreement between the dual agent, the seller and the buyer.

## TRANSACTION COORDINATOR

A transaction coordinator is a licensee who is not acting as an agent of either the seller or the buyer, yet is providing services to complete a real estate transaction.

The transaction coordinator is not an agent for either party and therefore owes no fiduciary duty to either party. The transactional coordinator is not the advocate of either party and therefore has no obligation to "negotiate" for either party. The responsibilities of the transaction coordinator typically include:
- providing access to and the showing of the property
- providing access to market information
- providing assistance in the preparation of a buy and sell agreement which reflects the terms of the parties' agreement
- presenting a buy and sell agreement and any subsequent counter-offers
- assisting all parties in undertaking all steps necessary to carry out the agreement, such as the execution of documents, the obtaining of financing, the obtaining of inspections, etc.

## DESIGNATED AGENCY

A buyer or seller with a designated agency agreement is represented only by agents specifically named in the agreement. Any agents of the firm not named in the agreement do not represent the buyer or seller. The named "designated" agent acts solely on behalf of his or her client and may only share confidential information about the client with the agent's supervisory broker who is also named in the agreement. Other agents in the firm have no duties to the buyer or seller and may act solely on behalf of another party in the transaction.

## LICENSEE DISCLOSURE (Check One)

I hereby disclose that the agency status of the licensee named below is:
- ___ Seller's agent (I will not be representing the buyer unless otherwise agreed in writing.)
- _✓_ Buyer's agent
- ___ Dual agent
- ___ Transaction coordinator (A licensee who is not acting as an agent of either the seller or the buyer.)
- ___ None of the above

## AFFILIATED LICENSEE DISCLOSURE (Check One)

- ___ Check here if acting as a designated agent. Only the licensee's broker and named supervisory broker have the same agency relationship as the licensee named below. If the other party in a transaction is represented by an affiliated licensee, then the licensee's broker and all named supervisory brokers shall be considered disclosed consensual dual agents.
- _✓_ Check here if not acting as a designated agent. All affiliated licensees have the same agency relationship as the licensee named below.

Further, this form was provided to the buyer or seller before disclosure of any confidential information.

_____     Date _12/26/2013_
Licensee

_____     Date _____
Licensee

## ACKNOWLEDGMENT:

By signing below, the parties confirm that they have received and read the information in this agency disclosure statement and that this form was provided to them before the disclosure of any confidential information specific to the potential sellers or buyers. THIS IS NOT A CONTRACT.

_____     Date _12/26/2013_
Potential Buyer/Seller (circle one)

_____     Date _12/26/2013_
Potential Buyer/Seller (circle one)

Disclaimer: This form is provided as a service of the Metropolitan Consolidated Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that this form is appropriate for the transaction. The Metropolitan Consolidated Association of REALTORS® is not responsible for the use or misuse of this form.

© 1995 Michigan Association of REALTORS®, revised 6/00

This contract is for use by Realcomp Subscribers. Use by any other party is illegal and voids the contract.



 **MICHIGAN ASSOCIATION OF REALTORS®**     **LEAD-BASED PAINT SELLER'S DISCLOSURE FORM** 

Property Address ___2401 CHICAGO ROAD, WARREN, MI 48092___
Street ___WARREN (MACOMB)___     **MICHIGAN**
City, Village, Township

**Lead Warning Statement**
Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

I.  **Seller's Disclosure (initial)**
    _____ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

       ☐   Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):
       _____
       _____

       ☐   Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

    _____ (b) Records and reports available to the seller (check one below):
       ☐   Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

       ☐   Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Seller certifies that to the best of his/her knowledge, the Seller's statement above are true and accurate.

                               Seller(s)

Date: _____
Date: _____

II. **Agent's Acknowledgment (initial)**
    _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

Agent certifies that to the best of his/her knowledge, the Agent's statement above is true and accurate.

                               Agent

Date: _____

III. **Purchaser's Acknowledgment (initial)**
    _____ (a) Purchaser has received copies of all information listed above.
    _____ (b) Purchaser has received the federally approved pamphlet *Protect Your Family From Lead In Your Home.*
    _____ (c) Purchaser has (check one below):
       ☐   Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or
       ☐   Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

Purchaser certifies to the best of his/her knowledge, the Purchaser's statements above are true and accurate.

                          Purchaser(s)

Date: ___12/23/2013___
Date: ___12/23/2013___

FORM L-3, ©1996 Michigan Association of REALTORS®, 10/96

This contract is for use by Realcomp Subscribers. Use by any other party is illegal and voids the contract.

 Instanet forms

*[Watermark text overlaying form:]* "Bankruptcy Sale" "As Is Sale" Seller has never occupied property & therefore cannot provide detailed disclosure

## Seller's Disclosure Statement

Property Address: _____ MICHIGAN
                          Street                              City, Village or Township

**Purpose of Statement:** This statement is a disclosure of the condition of the property in compliance with the Seller Disclosure Act. This statement is a disclosure of the condition and information concerning the property, known by the Seller. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering or any other specific area related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. **This statement is not a warranty of any kind by the Seller or by any Agent representing the Seller in this transaction, and is not a substitution for any inspections or warranties the Buyer may wish to obtain.**

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that even though this is not a warranty, the Seller specifically makes the following representations based on the Seller's knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's Agent is required to provide a copy to the Buyer or the Agent of the Buyer. The Seller authorizes its Agent(s) to provide a copy of this statement to any prospective Buyer in connection with any actual or anticipated sale of property. The following are representations made solely by the Seller and are not the representations of the Seller's Agent(s), if any. This information is a disclosure only and is not intended to be a part of any contract between Buyer and Seller.

**Instructions to the Seller:** (1) Answer ALL questions. (2) Report known conditions affecting the property. (3) Attach additional pages with your signature if additional space is required. (4) Complete this form yourself. (5) If some items do not apply to your property, check NOT AVAILABLE. If you do not know the facts, check UNKNOWN. FAILURE TO PROVIDE A PURCHASER WITH A SIGNED DISCLOSURE STATEMENT WILL ENABLE A PURCHASER TO TERMINATE AN OTHERWISE BINDING PURCHASE AGREEMENT.

**Appliances/Systems/Services:** The items below are in working order. (The items listed below are included in the sale of the property only if the purchase agreement so provides.)

_Bankruptcy Sale_
_As Is Sale_
_Seller has never occupied property & therefore cannot provide detailed disclosure_

| | Yes | Unknown | Not Available | | Yes | No | Unknown | Not Available |
|---|---|---|---|---|---|---|---|---|
| Range/oven | | | | Lawn sprinkler system | | | | |
| Dishwasher | | | | Water heater | | | | |
| Refrigerator | | | | Plumbing system | | | | |
| Hood/fan | | | | Water softener/ | | | | |
| Disposal | | | | conditioner | | | | |
| TV antenna, TV rotor | | | | Well & pump | | | | |
| & controls | | | | Septic tank & drain | | | | |
| | | | | field | | | | |
| Electric System | | | | Sump pump | | | | |
| Garage door opener & | | | | | | | | |
| remote control | | | | City water system | | | | |
| Alarm system | | | | City sewer system | | | | |
| Intercom | | | | Central air conditioning | | | | |
| Central vacuum | | | | Central heating system | | | | |
| Attic fan | | | | Wall furnace | | | | |
| Pool heater, wall liner | | | | Humidifier | | | | |
| & equipment | | | | Electronic air filter | | | | |
| Microwave | | | | Solar heating system | | | | |
| Trash compactor | | | | | | | | |
| | | | | Fireplace & chimney | | | | |
| Ceiling fan | | | | Wood burning system | | | | |
| Sauna/hot tub | | | | Dryer | | | | |
| Washer | | | | | | | | |

Explanations (attach additional sheets, if necessary): _____
_____

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

**Property conditions, improvements & additional information:**
1.  Basement/Crawlspace: Has there been evidence of water?                                    yes _____ no _____
    If yes, please explain: _____
2.  Insulation: Describe, if known: _____
    Urea Formaldehyde Foam Insulation (UFFI) is installed?                    unknown _____ yes _____ no _____
3.  Roof: Leaks?                                                                              yes _____ no _____
    Approximate age, if known: _____
4.  Well: Type of well (depth/diameter, age and repair history, if known): _____
    Has the water been tested?                                                               yes _____ no _____
    If yes, date of last report/results: _____

PAGE 1 OF 2                                                              BUYER'S INITIALS _____

                                                                        SELLER'S INITIALS _____

FORM H  JAN/06

This contract is for use by Realcomp Subscribers. Use by any other party is illegal and voids the contract.



## Seller's Disclosure Statement

Property Address: _____
Street                                           City, Village or Township

5. **Septic tanks/drain fields:** Condition, if known: _____
6. **Heating system:** Type/approximate age: _____
7. **Plumbing system:** Type: copper _____ galvanized _____ other _____
   Any known problems? _____
8. **Electrical system:** Any known problems? _____
9. **History of Infestation,** if any: (termites, carpenter ants, etc.) _____
10. **Environmental problems:** Are you aware of any substances, materials or products that may be an environmental hazard such as, but not limited to, asbestos, radon gas, formaldehyde, lead-based paint, fuel or chemical storage tanks and contaminated soil on property.
    unknown _____ yes _____ no _____
    If yes, please explain _____
11. **Flood Insurance:** Do you have flood insurance on the property?   unknown _____ yes _____ no _____
12. **Mineral Rights:** Do you own the mineral rights?   unknown _____ yes _____ no _____

**Other Items:** Are you aware of any of the following:
1. Features of the property shared in common with the adjoining landowners, such as walls, fences, roads and driveways, or other features whose use or responsibility for maintenance may have an effect on the property   unknown _____ yes _____ no _____
2. Any encroachments, easements, zoning violations or nonconforming uses   unknown _____ yes _____ no _____
3. Any "common areas" (facilities like pools, tennis courts, walkways or other areas co-owned with others), or a homeowners' association that has any authority over the property?   unknown _____ yes _____ no _____
4. Structural modifications, alterations or repairs made without necessary permits or licensed contractors?   unknown _____ yes _____ no _____
5. Settling, flooding, drainage, structural or grading problems?   unknown _____ yes _____ no _____
6. Major damage to the property from fire, wind, floods, or landslides?   unknown _____ yes _____ no _____
7. Any underground storage tanks?   unknown _____ yes _____ no _____
8. Farm or farm operation in the vicinity; or proximity to a landfill, airport, shooting range, etc.?   unknown _____ yes _____ no _____
9. Any outstanding utility assessments or fees, including any natural gas main extension surcharge?   unknown _____ yes _____ no _____
10. Any outstanding municipal assessments or fees?   unknown _____ yes _____ no _____
11. Any pending litigation that could affect the property or the right to convey property?   unknown _____ yes _____ no _____

If the answer to any of these questions is yes, please explain. Attach additional sheets, if necessary: _____

The Seller has lived in the residence on the property from _____ to _____ (date).
The Seller has owned the property since _____ (date).
The Seller has indicated above that all conditions of the items listed on this disclosure are true. If any changes occur in the structural/mechanical/appliance systems of this property from the date of this form to the date of closing, Seller will immediately disclose the changes to Buyer. In no event shall the parties hold the Broker liable for any representations not directly made by the Broker or Broker's Agent.

Seller certifies that the information in this statement is true and correct to the best of the Seller's knowledge as of the date of Seller's signature.

**BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY. THESE INSPECTIONS SHOULD TAKE INDOOR AIR AND WATER QUALITY INTO ACCOUNT, AS WELL AS ANY EVIDENCE OF UNUSUALLY HIGH LEVELS OF POTENTIAL ALLERGENS INCLUDING, BUT NOT LIMITED TO, HOUSEHOLD MOLD, MILDEW AND BACTERIA.**

**BUYERS ARE ADVISED THAT CERTAIN INFORMATION COMPILED PURSUANT TO THE SEX OFFENDERS REGISTRATION ACT, 1994 PA 295, MCL 28.721 TO 28.732, IS AVAILABLE TO THE PUBLIC. BUYERS SEEKING SUCH INFORMATION SHOULD CONTACT THE APPROPRIATE LOCAL LAW ENFORCEMENT AGENCY OR SHERIFF'S DEPARTMENT DIRECTLY.**

BUYER IS ADVISED THAT THE STATE EQUALIZED VALUE OF THE PROPERTY, PRINCIPAL RESIDENCE EXEMPTION INFORMATION, AND OTHER REAL PROPERTY TAX INFORMATION IS AVAILABLE FROM THE APPROPRIATE LOCAL ASSESSOR'S OFFICE. BUYER SHOULD NOT ASSUME THAT BUYER'S FUTURE TAX BILLS ON THE PROPERTY WILL BE THE SAME AS THE SELLER'S PRESENT TAX BILLS. UNDER MICHIGAN LAW, REAL PROPERTY OBLIGATIONS CAN CHANGE SIGNIFICANTLY WHEN PROPERTY IS TRANSFERRED.

Seller _____   Date: _____
Seller _____   Date: _____

Buyer has read and acknowledges receipt of this statement.

Buyer _____   Date: 12/26/2013   Time: _____
Buyer _____   Date: 12/26/2013   Time: _____

**Disclaimer:** This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of form for misrepresentation or for warranties made in connection with the form.

PAGE 2 OF 2

FORM H   JAN/06

This contract is for use by Realcomp Subscribers. Use by any other party is illegal and voids the contract.





December 27, 2013

Linda Kint
Ralph Roberts Realty
12900 Hall Road
Suite #190
Sterling Heights, MI 48313

Re: Tom and Karin Jaberoo

Dear Linda:

I am pleased to inform you that I have taken an application for an FHA Mortgage from Tom and Karin Jaberoo. Based upon a review of their credit report, W-2's, paystubs and bank statements and automated underwriting she has been approved for an FHA Mortgage with a sale price of $140,000.

Please note that this is an approval of mortgage credit, as this application has been past the automated underwriting system but it is still subject to formal underwriting once a proper purchase agreement and property appraisal has been received. Therefore, based on the information provided Mortgage 1, Inc. does not anticipate any problems once a proper purchase agreement and property appraisal have been received.

If you have any questions or require additional information please do not hesitate to contact me.

Sincerely,

Douglas P. Engelhardt
Mortgage 1, Inc.
Senior Loan Officer

13464 Canal, Sterling Heights, MI 48313 (586) 997-3533 Fax: (866) 324-2531

# BUYER / OFFER INFORMATION SHEET

## TO BE TURNED IN WITH ALL OFFERS, PLEASE PRINT CLEARLY

**PROPERTY ADDRESS:** 2401 Chicago Road, Warren, MI 48092

**RRR AGENT:** Tom Jaberoo - Keller Willams Macomb / St. Clair

**BUYER NAMES:** Tom and Karin Jaberoo

**ADDRESS:** 28222 Wexford Drive        **CITY:** Warren        **ZIP:** 48092

**PHONE:** 586-806-4433

**EMAIL:** jaberoo@yahoo.com

**CO-OP AGENT:**                          **OFC:**

**ADDRESS:**                          **CITY:**          **ZIP:**

**PHONE:**                          **AGT ID:**

**AGENT EMAIL:**

**LENDER:** Mortgage One, Inc        **OFFICER:** Doug Engelhardt

**ADDRESS:** 13464 Canal Rd, Sterling Heights, MI 48313        **PHONE:** 586-997-3533

**EMAIL:** teamdoug@mortgageone.com

**SALE PRICE:** $123,000        **TERMS:** FHA

**CONCESSIONS:** 0

**ESTIMATED CLOSING DATE:** 3/1/2014

# OFFER INSTRUCTIONS FOR THIS PROPERTY LISTED WITH
# RALPH ROBERTS REALTY, LLC FOR BANKRUPTCY ORDERED LISTINGS

Please follow the instructions below for the offer you are presenting for this property

- **YOUR CONTACT:** Linda Kint
  Ralph Roberts Realty, LLC
  12900 Hall Rd Suite 190
  Sterling Heights, MI 48313
  lindakint@gmail.com
  (586) 337-2600

- **EMD REQUIRED:** **Cash Offers:** 10% of the offer amount for the EMD
  **Conventional Loans:** 5% of the offer amount for the EMD
  **FHA Loans:** 3.5% of the offer amount for the EMD

**Once the offer is accepted by the Seller, EMD MUST be a Cashier's Check held by and payable to Ralph Roberts Realty. The EMD must be overnighted or delivered to our office within 48 hours.**

- **PURCHASE AGREEMENT:** Please use the uploaded PA attached to the MLS listing. This is the required PA for all offers on Bankruptcy ordered listings. No exceptions! Your offer will not be submitted for consideration if any changes are made to the pre-filled sections.
- **EMD:** Please provide a copy of the EMD with your offer
- **APPROVED LENDERS:** The use of one of the approved lenders is required for any mortgage offer.
- **PRE-APPROVAL:** Please provide a copy of the Pre-Approval letter. For cash offers, please provide verification of funds.
- **CREDIT SCORES:** Due to the high number of bogus Pre-Approval certificates that result in a negative impact, a copy of the recent credit scores is required by the trustee.
- **NO CONTINGENT OFFERS:** Private inspections and mortgage contingencies only.
- **INSPECTIONS:** If a city inspection is required, Purchaser will order and pay for the inspection and assume all required repairs. This is an AS-IS sale.
- **SHORT SALES:** If the offer is contingent on a private inspection, this contingency must be removed prior to submission to the Lender for short sale approval.

- **SELLER CONCESSIONS:** Maximum of 3% concessions on all short sale offers.
- **UTILITIES:** Are the responsibility of the Purchaser for all inspections.
- **WINTERIZATION:** All vacant properties are winterized. If the property is de-winterized, it shall be the obligation and expense of the Purchaser to re-winterize the property. Receipt required.
- **NO CMA:** Do not send a CMA or comps with your offer. It has no bearing on the decision.
- **NO Appliances, Hot Tubs, Window Treatments/Blinds, Pool Covers or Equipment, etc. are included with the sale.**
- **SUBMITTING OFFERS:** Scan/E-Mail all offers to lindakint@gmail.com
- **TIME TO PROCESS:** Typically it takes 5 - 7 business days to receive an answer on your offer. Occasionally it takes longer. We will make every attempt to give you an answer on your offer in a timely fashion. Please do not call, we will not forget about you.
- **DISCLOSURES:** Exempt disclosures will be signed at the time that the Bankruptcy Trustee signs your offer. We do not have Exempt Disclosures until then.
- **Title work is run by our office. No split closings.**

## THE PROCESS OF A BANKRUPTCY LISTING

The purpose of a Bankruptcy court order listing is to find equity/money from the sale of the home or any other assets that can help pay creditors that are owed money.

**Occupied or Vacant:** The house can still be occupied by the Debtor/Homeowner and they need to cooperate fully or vacate the property. Possession is immediate at closing.
**Closing Time:** Is normally within 45 days after bottom lined PA
**Offers:** Offers are received and reviewed by the Broker of Ralph Roberts Realty and then forwarded to the Trustee and their attorney with our recommendation to counter, accept or reject. Once your offer is accepted, you will receive the offer back with an addendum from the courts about an open auction on the property. The open auction is a formality and part of the bankruptcy code and protects the unsecured creditors. Very seldom will someone come to overbid your offer. There is not an open auction on short sale listed properties.
**Questions:** Bankruptcy ordered listings are normally a smooth process. If you have any questions, please call Linda Kint (586) 337-2600

X _____

Buyer's Agent acknowledges receipt of these offer instructions

# ADDENDUM TO PURCHASE AGREEMENT

1. Buyers understand that the proposed sale (the "Trustee's Sale") is a sale of property of a bankruptcy estate by a bankruptcy trustee ("Seller").
2. Thus, this offer or any other offers, and the acceptance of any offers, is subject to Bankruptcy Court approval and the entry of an order authorizing the sale of the property free and clear of any interests, which will be obtained by filing a sale motion with the Bankruptcy Court.
3. Seller agrees to file a "sale motion" requesting Court approval within two days after: (1) Buyers sign this addendum and any other changes made to the Purchase Agreement; (2) Seller obtains a preliminary title commitment satisfactory to Seller; and (3) if the Purchase Agreement contains an inspection contingency, then the date Buyers have completed their inspection and indicated that there are no issues raised by that inspection.
4. Moreover, Buyers understand that the proposed sale is contingent on express or implied consent from the respective lienholders.
5. What is more, consent by the lienholders of the Trustee's Sale must include funds for the bankruptcy estate.
6. And Seller will have sole discretion to determine if the available funds warrant moving forward with a sale.
7. If the property has not been foreclosed on, and is sold at a foreclosure sale after the date of this addendum, then Seller has the sole discretion to terminate this purchase agreement and refund Buyers' deposit.
8. The sale is "as is, where is," and Seller makes no warranties or representations as to character or fitness of the property or any items included in the sale, except as to marketable title, which will be established by entry of an order of the United States Bankruptcy Court transferring title free and clear of any interests.
9. Title will transfer by Trustee Deed.
10. Buyers will receive all improvements and appurtenances in the property on the closing date, and Seller makes no guarantee that any of the items enumerated in the Purchase Agreement will be present on the closing date.
11. Buyers and Seller agree to close a sale within two days after the later of: Court approval; the running of the 21-day notice period required under the Bankruptcy Code; the expiration of the 14-day appeal period, but only if required by the title co. selected to perform the closing; or consent by the lienholders.
12. Time is of the essence.
13. Thus, if a sale has not closed within the time provided in Paragraph 11, then Seller, in Seller's sole discretion, and without Buyers' permission, may close a sale with the best offer then available.
14. If Seller invokes the provisions of Paragraph 13, then Seller must refund Buyers' deposit.
15. Buyers understand that some party in interest may object to the sale motion.
16. Thus, Seller, in Seller's sole discretion, may withdraw the sale motion, at any time, without Buyers' consent, which will have the effect of nullifying this Purchase Agreement.
17. If Seller withdraws the sale motion, then Seller must refund Buyers' deposit.
18. Buyer and Seller will determine a mutually agreeable time and place to close.

19. Seller will select the title co. for closing.
20. In Seller's sole discretion, there will be no split closing.
21. The terms of this addendum supersede any inconsistent terms contained in the purchase agreement or any other addendums.

SELLER:

_____  Date: _1/3/14_____

Trustee

BUYERS:

_____  Date: _12/26/2013_____

Name:

_____  Date: _12/26/2013_____

Name:

Address: _28222 WEXFORD WARREN, MI 48092_